UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:18-CV-124-TBR

TWIN CITY FIRE INSURANCE COMPANY                   PLAINTIFF

v.

SANDS M. CHEWNING                                            DEFENDANT
       AND
TASHA A. ULAND
       AND
WILLIAM B. ULAND

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon motion by Plaintiff, Twin City Fire Insurance Company ("Twin City"), for summary judgment. (R. 16). Twin City seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 and FRCP 57. Defendant, Sands M. Chewning, has filed his response. (R. 25). Defendants, Tasha and William Uland, have also filed their response. (R. 20). Twin City has filed its reply (R. 28). Fully briefed, this matter is ripe for review. Having carefully considered the issues in this case, and for the following reasons, the Court **DECLINES JURISDICTION** over the matter at this time pursuant to 28 U.S.C. § 2201. Therefore, Twin City's motion for summary judgment (R. 16) is **DENIED.**

### BACKGROUND

Declaratory Defendant Sands Chewning—an attorney practicing law in Kentucky—represented Cherie Sherril in a custody dispute with her granddaughter's former foster parents, Declaratory Defendants Tasha and William Uland. (R. 16-1 at 2). Chewning was indicted for crimes in connection with his alleged use of an electronic recording device to eavesdrop on the Ulands. Chewning allegedly purchased the recording device and advised his client to install the device within the clothing of the granddaughter—a minor child—so that Chewning and Sherril

1

could eavesdrop on the Ulands while the granddaughter was visiting them. (R. 20 at 2). After Chewning was indicted, the Ulands filed a bar complaint against Chewning and a civil action against Chewning and Sherril in Christian County Circuit Court. (*Id.*). Both the bar complaint and the state civil action are currently pending. (*Id.*).

On September 28, 2017, Chewning entered a guilty plea to the charge of criminal attempt to commit eavesdropping. (R. 16-1 at 5-6). On January 29, 2018, the Ulands filed a motion for partial summary judgment in the state civil action on the issue of liability based upon Chewning's admitted criminal conduct. (R. 16-8 at 1). The Ulands' motion for partial summary judgment was granted on July 16, 2018. (R. 16-9).

Twin City is an insurance company. (R. 1 at 2). On or about May 11, 2016, Twin City issued a Lawyers' Professional Liability Insurance Policy ("the Policy") to Chewning's law firm. (R. 1 at 5). The policy provides coverage for damages arising

> out of a negligent act, error, omission or **personal injury** in the rendering of or failure to render **professional legal services** for others by you or on your behalf provided always that the negligent act, error, omission or **personal injury** occurs on or after the **retroactive date** as stated in the Declarations.

(R. 1 at 5) (emphasis in original). The policy also provides that "[Twin City] shall pay reasonable and necessary fees, costs and expenses (but not **damages** or sanctions) incurred by an **insured** resulting from the defense of a proceeding by a regulatory or disciplinary official or agency" if certain conditions set forth by the Policy are met. (*Id.* at 6) (emphasis in original).

The Policy also includes the following coverage exclusions:

This insurance does not apply to **claims**:
1. Arising out of any dishonest, fraudulent, criminal or malicious act, error, omission or **personal injury** committed by, at the direction of, or with the knowledge of an **insured**. This exclusion does not apply to an **insured** who did

> not personally commit or personally participate in committing any of the knowingly wrongful acts, errors, omissions or **personal injury**, provided that:
> a. Such **insured** had neither notice nor knowledge of such knowingly wrongful act, error, omission or **personal injury**; and
> b. Such insured upon receipt of notice or knowledge of such knowingly wrongful act, error, omission or **personal injury**, immediately notifies us.

(R. 1 at 5-6) (formatting altered). Twin City argues, and the Defendants do not dispute in their responses to the motion for summary judgment, that "the Criminal Act Exclusion in Twin City's policy substantively applies to preclude coverage to Chewning for the claims in the Uland suit and the Kentucky Bar Complaint." (R. 28 at 1). Instead, Defendants argue that Twin City should not be allowed to enforce the exclusion provision of the Policy because Twin City did not properly send a reservation of rights letter to Chewning. (*Id.*). The most important facts in this case are therefore those relevant to the alleged transmission of the reservation of rights ("ROR") letters.

Twin City argues that it emailed its ROR to Chewning on April 26, 2017. (R. 16-1 at 5). Twin City argues that the email address it sent the ROR to was listed on Chewning's law firm's website, that Chewning had previously used it to communicate with Twin City, and that Chewning continued to use the email address after the ROR was sent. In the first ROR, Twin City argues that it identified relevant policy language and "explained that it would defend Chewning 'under a complete and full reservation of any and all rights under the subject policy.'" (*Id.*). Twin City alleges that it "received electronic confirmation the email transmitting the April 26, 2017 reservation of rights letter was not only delivered to Chewning's email address but was also opened." (*Id.*). Finally, Twin City alleges that it sent Chewning a supplemental ROR through email and U.S. mail on November 29, 2017. (*Id.* at 6).

Defendants deny that Chewning received either ROR letters. (R. 25-1 at 2; R. 20 at 2). Defendants also argue that even if Chewning had received the ROR letters, they are improper. Defendants argue that—because Twin City was allegedly providing Chewning's defense under a

3

ROR—Chewning is entitled to independent counsel and that the ROR was improper because it did not notify him of that right. Defendants also argue that it is improper to send a ROR by email. Instead, Chewning asserts that a ROR should "be sent certified mail, return receipt requested to the insured as well as defense counsel." (R. 25-1 at 4). Finally, Defendants argue that the ROR letters were untimely. Twin City disputes each of these arguments.

## STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 556 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Back v. Nestle USA, Inc.*, 694 F. 3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251-52).

As the party moving for summary judgment, Twin City must shoulder the burden of showing the absence of a genuine dispute of material fact. Fed. R. Civ. P. 56(c); *see Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). If Twin City satisfies its burden of production, Defendants "must—by deposition, answers

to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

## DISCUSSION

Twin City argues that it owes neither a defense nor indemnity coverage to Chewning because both the state civil action and bar complaint arise out of Chewning's admitted criminal conduct, which is excluded from coverage by the policy. Defendants argue that Twin City has either waived its right to deny coverage under the policy or that Twin City should be estopped from enforcing the policy coverage exclusions because Twin City has provided representation in the state action without properly issuing a ROR. In his answer, Chewning "denies jurisdiction to declare the rights and liability of the parties herein…." (R. 5 at 5).

Before reaching the substantive issues in this case, the Court must consider whether to exercise its discretionary jurisdiction under the Declaratory Judgment Act ("DCA"). Upon careful consideration of the issues in this case, the Court finds it appropriate to decline jurisdiction in this matter at this time pursuant to the DCA.

The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... *may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). The Act is an enabling act, which extends the jurisdiction of the court beyond the jurisdictional basis initially required. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 287 (1995). While this Act authorizes district courts to exercise jurisdiction, it does not mandate or impose a duty to do so. *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.,* 373 F.3d 807, 812 (6th Cir.2004); *Allstate Ins. Co. v. Mercier,* 913 F.2d 273, 276 (6th Cir.1990), *abrogated on other grounds by Wilton v. Seven Falls Co.,* 515 U.S. 277 (1995). The Act convers on the "federal courts unique and substantial discretion in

deciding whether to declare the rights of litigants." *Wilton,* 515 U.S. at 286. A district court may not decline jurisdiction, however, as a matter of whim or personal disinclination. *Mercier,* 913 F.2d at 277; *see also Green v. Mansour,* 474 U.S. 64 (1985) (characterizing the statute as " 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.' " (quoting *Public Service Comm'n v. Wycoff Co., Inc.,* 344 U.S. 237 (1952)).

In determining whether the exercise of jurisdiction is proper, the Court must consider five factors:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata'; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R.R. Co. v. Consol. Rail Co.,* 746 F.2d 323, 326 (6th Cir.1984); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008). The *Grand Trunk* factors were formulated with three guiding principles in mind: "efficiency, fairness, and federalism." *Western World Ins. Co. v. Hoey, et al.*, 773 F.3d 755, 759 (6th Cir. 2014). The factors are not evenly weighted and their respective importance depends on the "underlying considerations of efficiency, fairness, and federalism," which will vary from case to case. *Id.* "[T]he essential question is always whether a district court has taken a good look at the issue and engaged in a reasonable analysis of whether issuing a declaration would be useful and fair." *Id.*

**Whether the declaratory action will settle the controversy.**

There is a split in authority within the Sixth Circuit regarding the first factor. The first line of authority holds that "a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555 (6th Cir. 2008) (citing *Northland Ins.*

*Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003); *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1066 (6th Cir. 1987)). The competing line of authority holds that "while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court." *Id.* (citing *Travelers Indem. Co. v. Bowling Green Prof'l Assoc, PLC*, 495 F.3d 266, 272 (6th Cir. 2007); *Bituminous Cas. Corp. v. J&L Lumber Co.*, 373 F.3d 807, 814 (6th Cir. 2004)). The United States District Court for the Eastern District of Kentucky explained the split in authority as follows:

> The inconsistency in these decisions can be reconciled by considering their distinct factual differences. In *Northland*, "the plaintiff was not a party to the state court action and neither the scope of the insurance coverage nor the obligation to defend was before the state court." *Id.* at 556 (internal quotations omitted). On the other hand, "the insurance coverage controversy" in *Bituminous* "rested on a fact-based question of state law regarding whether the plaintiff in the estate action was actually an employee of the defendant," which was already being considered in two separate state court proceedings." *Id.* at 555–56.

*Auto-Owners Ins. Co. v. Egnew*, 152 F. Supp. 3d 868, 874 (E.D. Ky. 2016).

In the case before the Court, the record is unclear regarding the underlying state court proceedings. Because the parties have not sufficiently informed the Court on the nature and status of the underlying state court action, the Court cannot determine whether a declaratory judgment would settle the controversy under either the *Northland* or *Bituminous* line of authority. Due to this ambiguity, the Court considers this factor to be neutral. Even assuming, *arguendo*, that a declaratory judgment would settle the controversy, the Court would nevertheless decline jurisdiction at this time because of the overwhelming weight of the fourth factor discussed in detail below.[1]

---

[1] The fourth factor is: "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction."

**Whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue.**

There is also a split in authority within the Sixth Circuit regarding the second factor. The competing lines of authority disagree on whether "the district court's decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Scottsdale*, 513 F.3d at 558. Although the Sixth Circuit has not completely resolved this split, the *Scottsdale* court focused on "the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer" and explained that it is not necessary for the declaratory action to clarify the state litigation issues as long as it does not "create any confusion about the resolution of those issues." *Id.*

In this case, a declaratory judgment would certainly clarify the legal relations presented in the declaratory judgment action. Twin City initiated this action seeking a judgment "[d]eclaring that Twin City is not obligated to defend and/or indemnify Chewning for the claims against him in the Bar Complaint and the Suit." (R. 1 at 9). Chewning asserts counterclaims seeking a judgment denying "Twin City Fire Insurance Company's request to not provide coverage to him," declaring "that coverage does exist as a result of the actions and inactions of Twin City," and "Judgment against Twin City Fire Insurance Company for its actions of bad faith and negligence in the amount of at least Seventy-six Thousand Dollars." (R. 5 at 7-8). A declaratory judgment would definitively decide the status of Twin City's alleged obligation to defend and/or indemnify. A declaratory judgment might also clarify Chewning's bad faith and negligence claims because they involve a determination of Twin City's duty to defend/indemnify. Furthermore, there is no evidence on the record which suggests a declaratory judgment would create any confusion about the resolution of

issues in the underlying state court action. Therefore, the second factor weighs in favor of exercising jurisdiction at this time.

**Whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for *res judicata*.'**

"The third factor is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum.'" *Scottsdale*, 513 F.3d at 558 (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004). "The question is . . . whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first." *Dale*, 386 F.3d at 789. In the absence of affirmative evidence on the record, a court should not impute an improper motive to a plaintiff. *See Travelers*, 495 F.3d at 272; *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964 (6th Cir. 2000); *Allstate*, 913 F.2d 273, 279 (6th Cir. 1990). The Sixth Circuit Court of Appeals generally has given plaintiffs "the benefit of the doubt that no improper motive fueled the filing of [the] action" when the plaintiff files his claim after the state court litigation has begun. *Bituminous*, 373 F.3d at 814; *see also Northland*, 327 F.3d at 454. In other words, "where the declaratory plaintiff files their action *after* the state court litigation has commenced, there is a presumption that the declaratory plaintiff does not have an 'improper motive' which 'fueled the filing of [the] action.'" *Egnew*, 152 F.Supp.3d at 877. "A district court should not deny jurisdiction to a plaintiff who has not 'done any more than choose the jurisdiction of federal rather than state court, a choice given by Congress.'" *Scottsdale*, 513 F.3d at 558 (quoting *State Farm Fire and Cas. Co. v. Odom*, 799 F.2d 247, 250 n. 1 (6th Cir. 1986)).

In this case, there is no evidence on the record indicating that Twin City had an improper motive for filing this declaratory action. Because it filed this declaratory action after the state court litigation commenced, Twin City is entitled to a presumption of proper motivation. *Egnew*, 152 F.Supp.3d at 877. There being no evidence on the record to overcome this presumption of proper motive, the third factor weighs in favor of exercising jurisdiction at this time.

**Whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction.**

The fourth factor is by far the most probative in this case. "[W]here another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 283 (1995) (quoting *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 495 (1942)). "However, 'the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction.'" *Scottsdale*, 513 F.3d at 559-58 (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987)). The Sixth Circuit has outlined three sub-factors that the Court must consider "to determine whether the exercise of jurisdiction would increase friction between federal and state courts." *Scottsdale*, 513 F.3d at 560 (citing *Bituminous*, 373 F.3d at 814-15). The sub-factors are as follows:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Bituminous*, 373 F.3d at 814-15 (citing *Roumph*, 211 F.3d at 968) (formatting altered).

The first sub-factor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Scottsdale*, 513 F.3d at 560. The Sixth Circuit recognizes that insurance coverage issues "can sometimes be resolved as a matter of law and do not require factual findings by a state court." *Id.* (citing *Northland*, 327 F.3d at 454; *Green*, 825 F.2d at 1067). On the other hand, "sometimes resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court." *Id.* (citing *Travelers*, 495 F.3d at 272). "In such cases, the exercise of jurisdiction would be inappropriate." *Id.*

As discussed in the analysis of the first *Grand Trunk* factor above, the record is unclear regarding the underlying state court proceedings. There are factual issues that may be important in resolving the declaratory action. Specifically, whether Twin City sent and Chewning received the ROR letters may be important to the resolution of this action. Other issues in this action may be resolved as a matter of law. For example, whether an insured has a right to independent counsel under Kentucky law when the insurer is providing him with a defense under a reservation of rights may be resolved as a matter of law. However, due to the lack of information on this issue, the first sub-factor is neutral. Even assuming *arguendo* that this sub-factor weighs in favor of exercising jurisdiction, the fourth *Grand Trunk* factor would nevertheless weigh in favor of declining jurisdiction due to the overwhelming weight of the second and third sub-factors.

"The second sub-factor focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Scottsdale*, 512 F.3d at 560. In *Scottsdale*, the Sixth Circuit Court of Appeals explained:

> We generally consider state courts to be in a better position to evaluate novel questions of state law. *See Travelers,* 495 F.3d at 272 ("[T]he district court held that the state court would not be in a significantly better position to evaluate the

> terms or exclusions in the insurance contracts because both forums would apply Kentucky state law. However because Kentucky law is controlling, we conclude that Kentucky courts are in the better position to apply and interpret its law on these issues."); *Bituminous,* 373 F.3d at 815–16 ("Where as here, there are two potential unresolved questions of state law concerning state regulated insurance contracts, this consideration weighs against exercising jurisdiction."); [*Omaha Property and Cas. Ins. Co. v. Johnson,* 923 F.2d 446, 448 (6th Cir. 1991) ("For the federal courts to preempt the right of the state court to rule on a previously undetermined question of state law, more must be present than the desire of the insurance company to avoid the possibility of an unfavorable ruling in state court by convincing a federal judge to rule first."). "This is not to say that a district court should always turn away a declaratory judgment action when an undetermined question of state law is presented, but it is an appropriate consideration for the court to weigh in the exercise of its discretion." [*Roumph*]*,* 211 F.3d at 969.

*Scottsdale*, 513 F. 3d at 560. "Sixth Circuit precedent is clear—Kentucky courts are better situated than this Court to adjudicate matters that revolve around state regulated insurance contracts." *Egnew*, 152 F.Supp.3d at 879 (citing *Travelers*, 495 F.3d at 272; *Bituminous*, 373 F.3d at 815-16).

Chewning argues that—because Twin City was providing his defense allegedly under a reservation of rights—he is entitled to independent counsel and that the reservation of rights letter is improper because it did not notify him of that right. (R. 25-1 at 5-7). Twin City argues that Kentucky law does not recognize the right to independent counsel under these circumstances. (R. 28 at 3). Twin City supports its argument that Kentucky law does not require an insurer to appoint independent counsel by citing to *Outdoor Venture Corp. v. Philadelphia Indem. Ins. Co.*, No. 6:16-CV-182-KKC, 2018 WL 4656400, at *18 (E.D. Ky. Sept. 27, 2018).

In *Outdoor Venture*, the United States District Court for the Eastern District of Kentucky explained:

> It is also unlikely that the Kentucky Supreme Court would presume that insurance defense counsel will behave unethically. Thus, the Court is unable to find that Kentucky courts would require that insurers pay for independent counsel anytime there is a potential conflict between a coverage issue and the merits of the underlying litigation.

*Id.* at *9. For the following reasons, this Court is not persuaded by *Outdoor Venture*. *Outdoor Venture* relies on California and Fourth Circuit case law to arrive at the conclusion that a significant and actual conflict is necessary for a right to independent counsel to arise. 2018 WL 4656400 at *19. However, the Supreme Court of Kentucky stressed in an analogous case "that the mere appearance of impropriety is just as egregious as any actual or real conflict." *American Ins. Ass'n v. Kentucky Bar Ass'n*, 917 S.W.2d 568, 573 (Ky. 1996). In *American Ins.*, the Kentucky Supreme Court endorsed a Kentucky Bar Association Advisory Ethics Opinion prohibiting any lawyer from entering into contract with a liability insurer to do all the insurer's defense work for a set fee. *Id.* In reaching its decision, the court explained:

> We do not believe that in most instances the interests of the insured and the insurer are alike, but are more apt to agree with Respondent's contention that while the insured and the insurer may share some common interests, the two parties are subject to complete divergence at any time. Inherent in all these potential conflicts is the fear that the entity paying the attorney, the insurer, and not the one to whom the attorney is obligated to defend, the insured, is controlling the legal representation.

*Id.* at 573. The *American Ins.* court also considered and declined to disturb a fourteen-year-old Unauthorized Practice of Law Opinion that prohibited liability insurers from using salaried attorneys to defend claims against insureds. *Id.* The Court reasoned that:

> [N]o situation is more illustrative of the inherent pitfalls and conflicts therein than that in which house counsel defends the insured while remaining on the payroll of the insurer. "No man can serve two masters," *Kentucky State Fair Bd. v. Fowler*, 310 Ky. 607, 615, 221 S.W.2d 435, 439 (1949), regardless here of either any perceived "community of interest" or Complainants' Pollyanna postulate that house counsel will continue to provide undivided loyalty to the insured.

*Id.*

Similarly, in *American Cas. Co. v. Shely*, Kentucky's highest court held that an insurer was estopped from denying liability when the insurer had controlled the investigation and defense of the insured's action for nearly a year without raising any question regarding noncoverage and

13

without making any reservation of rights. 234 S.W.2d 303 (Ky. 1950). In reaching its decision, the court reasoned:

> One of the basic elements of an estoppel is that the person claiming it must have been prejudiced by the action of the person against whom it is asserted. Generally the courts hold that where an insurance company undertakes the defense of an accident case, the loss of the right by the insured to control and manage the case is itself a prejudice. . . . If a man is to bear the burden of the result of a defense to an action, it is his privilege to have his own personality appear in its course. He is entitled to have the results measured up to him, and not to some other. . . The loss of a right to control and manage one's own case is itself a prejudice.

*Id.* at 305. *Shely* and *American Ins.* serve as examples of Kentucky's highest court expressing concern regarding the propriety of insurer funded representation in certain circumstances. Whether the case before this Court presents a circumstance where such a concern crosses the threshold into improper conduct is unclear. As the United States District Court for the Eastern District of Kentucky recognized in *Egnew*: "the right to independent counsel when an insurance company defends under a reservation . . . is a novel question of state law." 152 F.Supp.3d at 879. Because this case presents an important and novel question of state law, and because Kentucky's highest court has expressed concern regarding the propriety of insurer funded representation in analogous cases, the second sub-factor weighs heavily in favor of declining jurisdiction at this time.

The third sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Scottsdale*, 513 F.3d at 561. This case involves the interpretation of Kentucky's insurance law. The Sixth Circuit recognizes that "issues of 'insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve.'" *Travelers*, 495 F.3d at 273(quoting *Bituminous*, 373 F.3d at 815). Furthermore, "[t]he states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and

enforce the public policies that form the foundation of such regulation." *Bituminous*, 373 F.3d at 815.

This case also requires interpretation of the boundaries of what constitutes appropriate professional conduct of Kentucky's attorneys. "[T]he Kentucky Rules of Professional Conduct and the means by which this state oversees the conduct of its attorneys are personal to Kentucky." *American Ins.*, 917 S.W.2d at 571. "The right to prescribe such rules as are necessary to qualify, regulate, and control attorneys as officers of the court is a right of self-preservation." *Ratternam v. Stapleton*, 371 S.W.2d 939, 941 (Ky. 1963).

Because this case involves the interpretation of Kentucky's insurance law and the regulation of Kentucky's attorneys, the final sub-factor weighs heavily in favor of declining jurisdiction. To determine whether an insured is entitled to independent representation when he is being provided a defense under a reservation of rights, which is a novel issue of Kentucky law, will necessarily implicate important state policies. These same important policies will be implicated by the determination of whether an insurer must notify the insured of this right in its reservation of rights letter. The Sixth Circuit has recognized that Kentucky state courts are more familiar and better situated to resolve issues implicating important state policies. *Travelers*, 495 F.3d at 273; *Bituminous*, 373 F.3d at 815. Therefore, the third sub-factor weighs heavily in favor of declining jurisdiction at this time.

Two of the three sub-factors weigh heavily in favor of declining jurisdiction. The other factor is neutral. However, even assuming the first sub-factor weighed in favor of exercising jurisdiction, it would be overwhelmed by the incredible weight of the second and third sub-factors. Therefore, the Fourth *Grand Trunk* factor weighs heavily in favor of declining jurisdiction at this time.

**Whether there is an alternative remedy which is better or more effective.**

The final *Grand Trunk* factor weighs in favor of declining jurisdiction. "A district court should 'deny declaratory relief if an alternative remedy is better or more effective.'" *Scottsdale*, 513 F.3d at 562 (quoting *Grand Trunk*, 746 F.2d at 326). "There are typically two alternative remedies for a federal declaratory plaintiff: (1) seek a declaratory judgment in Kentucky state court pursuant to Ky. rev. Stat. Ann. § 418.040 or (2) file an indemnity action at the conclusion of the state court lawsuit." *Egnew*, 152 F.3d at 880. To determine whether an alternative remedy is better or more effective, a district court must engage in an inquiry that is "fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Scottsdale*, 513 F.3d at 562.

In this case, Twin City could have pursued a declaratory judgment in state court. *See* Ky. Rev. Stat. Ann. § 418.040 (2019) ("In any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief; and the court may make a binding declaration of rights, whether or not consequential relief is or could be asked."). And as discussed in this Court's analysis of the fourth *Grand Trunk* factor, Kentucky state courts "are in a superior position to resolve undecided or novel questions of state law and are better suited to apply public policy to insurance cases." *Egnew*, 152 F.3d at 880. Because there is an alternative remedy which is better or more effective, this factor weighs in favor of declining jurisdiction at this time.

**Balancing the factors.**

The Sixth Circuit has "never indicated how these *Grand Trunk* factors should be balanced when reviewing a district court's decision for abuse of discretion." *Scottsdale*, 513 F.3d at 563. The relative weight of each factor "depends heavily on the 'underlying considerations of efficiency, fairness, and federalism,' which will vary depending on the circumstances of each case." *Id.* (quoting *Hoey*, 773 F.3d at 759). In this case, the second and third factors weigh in favor of exercising jurisdiction. The fourth and fifth factors weigh in favor of declining jurisdiction. The first factor is neutral. The factors are not equally weighted, however, and underlying considerations of federalism arising from the particular circumstances of this case afford the fourth factor enormous weight. This case presents a novel question of state insurance law and also involves an important issue related to the regulation of attorney's who practice law in Kentucky. For the foregoing reasons, the Court finds it appropriate to decline jurisdiction in this matter at this time.

**ORDER**

For the foregoing reasons, the Court **DECLINES TO EXERCISE JURISDICTION** over this matter at this time. Therefore, Twin City's motion for summary judgment (R. 16) is **DENIED.**

**IT IS SO ORDERED.**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

May 13, 2019

CC: Counsel of Record